Good morning, your honors. May it please the court, my name is Julia Jones and I'm a certified law student appearing with the UCI Law Appellate Litigation Clinic under the supervision of Professor Catherine Davis on behalf of Petitioner Chi Cho. My colleague, Evan Buehler, will be providing rebuttal and we'd like to reserve two minutes for it. Your honors, this court should grant Mr. Cho's petition for three reasons. First, under Guo v. Sessions, the record in this case compels a finding of past persecution. The facts of Guo v. Sessions are remarkably similar to the facts of this case. Like Mr. Guo, Mr. Cho is a devout Christian who was arrested while illegally worshiping at a Christian home church in China. Mr. Cho was detained for two days, interrogated, electrocuted. He sustained bruises and bleeding. Counsel, the physical beating that your client suffered strikes me as perhaps not as serious as in Guo 1 and perhaps more akin to goo, which is what the BIA said. The one thing that does sort of move me is that the Chinese police put conditions on him and required him to report weekly. So what do we know about what the Chinese required of him? Absolutely, your honor. The pledge which Mr. Cho signed, he has always maintained, comprised a prohibition on his religious exercise. Under the penalty of perjury, he wrote in his asylum application that he was unable to practice his religion and consequently that is why he fled to the United States. So do we know what the pledge actually said? Your honor, the content of the interrogation sessions that Mr. Cho was forced to undergo indicate that the pledge prevented him from associating with his fellow Christians, i.e. attending church, and also prevented him from preaching Christianity. We don't have that in the record? Mr. Cho testified credibly about the fact that he was interrogated about whether he'd been in contact with his fellow church members and whether he was engaged in propagandizing the cult. He also wrote in his appeal before the BIA that he incurred an inability to attend his home church while he was adhering to the terms of his supervised release. As to your point about the physical harm, your honor, I would like to recognize that in Juan v. Gonzalez, this court recognized that an instance of electrocution, as occurred in the present case, may on its own comprise physical harm that is sufficient to establish past persecution. And further, the present case is distinguishable from Gu on the physical harm basis in several ways. Gu sustained no bruises or bleeding and he was not electrocuted and, as you pointed out, Judge Bybee, he was not forced to renounce his religion and he was never prevented from attending church in the way Mr. Cho in the present case was. Now, as discussed, the facts of Mr. Cho's release are virtually identical to the facts of Mr. Guo's release. The weekly interrogation sessions, the fact that he had to report and was subject to questions about whether he was engaged in religious exercise, and the fact that this essentially amounted to a prohibition on his ability to lead a Christian life compels a finding of past persecution. You also have another claim under the Convention Against Torture, and it seems to me that the considerations there are quite different. Why, in your view, doesn't substantial evidence support the conclusion that there's no probability or likelihood of torture? In Al-Sahir, Judge Graber, this Court held that an act intending to inflict physical harm may comprise torture, and this Court has also held that past torture that occurs, which in this case would be the beating and the electrocution that was served. It seems to me that the BIA's holding here is that, accepting the testimony as credible, what happened did not rise to the level of torture as distinct from persecution. So what's wrong with that? Torture is pretty extreme, is it not? In the present case, Mr. Cho suffered acts intended to cause physical harm, and the fact that he suffered those acts comprising past torture is virtually dispositive of the fact that he will suffer future torture if returned to China. So the distinction, though, that you are addressing was between persecution and torture. Is that, in your view, a distinction that produces a different outcome in this case? In other words, can the conduct against Mr. Cho be The conduct committed against Mr. Cho may compel a finding of past persecution without rising to the level of torture. However, based on the facts of this case, the harm which he underwent is sufficient to establish both standards. In addition to the BIA's error in failing to find that Mr. Cho underwent past persecution, it also failed when it rejected his claim of future persecution. It alternately mischaracterized and ignored vital record evidence indicating that Mr. Cho has an objective, well-founded fear of future persecution if he is returned to China. The BIA mischaracterized the period that Mr. Cho spent in China following his initial release as one without harm, when in fact he was undergoing ongoing harm during this period of time because he had been forced to renounce his religion and was subject to ongoing government monitoring and continuous weekly interrogation sessions about whether he'd been engaged in practicing his faith. Further, the BIA disregarded the country condition reports that Mr. Cho provided, which indicate that Chinese Christians, a group of which he is a member, are consistently harassed, detained, and sentenced to prison as a result of worshiping in China. In some instances, Chinese parents have been forced to sign pledges saying they will not attend home churches as a condition of registering their children for school. Further, did you have a question, Judge? I do. Your supplemental reply brief argues that if we were to determine that the petitioner had established past persecution, that the respondent shouldn't be given an opportunity on remand to rebut the presumption of future persecution. But in your supplemental opening brief, it seemed that you conceded that upon remand that that opportunity should be given to the government. Can you straighten me out on what your position is? Certainly, Your Honor. This Court held in Cuanvi-Gonzalez that when a petitioner has established past persecution, and in this case, the record compels a finding of past persecution, then, and there has been no evidence presented before the panel or at any level of the Court, that the petitioner has established past persecution. And in this case, there has been no evidence presented before the panel of appeal to rebut the presumption of a well-founded fear of future persecution. This Court can, on its own, determine whether a petitioner is eligible for asylum. Isn't that exactly the opposite of what we held in 2018 in the quote number two case where we remanded for the BIA to determine in the first instance whether the government could rebut? Isn't that what we have to do? This is an agency with its own independent authority. While this Court has the authority to grant the petition on its own, if this Court considers remand to be necessary for an application... How do we have the authority when we don't know whether there is a rebut, where the presumption can be rebutted? Because the government has supplied no evidence to rebut the presumption of a well-founded fear of future persecution in this case. It didn't have to. It never, the IJ never reached that level. And neither did the BIA. Correct. Because the IJ and the BIA wrongfully failed to... Right. That's why we would correct it, send it back to the BIA for further proceedings. Why would we go ahead and decide something that has not been addressed by the agency? If this Court determines that it is necessary to remand the case for further proceedings so that the agency can apply Guovi Sessions in the first instance and rebut the well-founded fear of future persecution, and remand at the very least is warranted so that the agency can have an opportunity to comply with Wren, because the immigration judge in the first instance did not provide Mr. Cho with a requisite notice and opportunity, even though it denied his claim partially based on his failure to provide corroborative evidence. Thank you. Thank you. We'll give your colleague, we'll add a minute to the time for rebuttal when the time comes. Certainly. I appreciate that. Morning, Your Honors. Marina Stevenson. May it please the Court. I'm here on behalf of the Attorney General. And I think that really the only matter that is before this Court is whether the petitioner suffered past persecution in the first instance. Well, this seemed to me almost identical to the 2018 Guo case. I'm sure I'm pronouncing all these names wrong, but I mean, it's eerily similar down to the, you know, two slaps in the face by the interrogating officer. So how do you distinguish that case in which we held that substantial evidence did not support a finding of no past persecution? Certainly, Your Honor. That finding, the Court never reached the decision as to whether the physical harm rose to the level of past persecution in the first instance. And in fact, what I've begun referring to as the Gao 2018 footnote 6 seems to infer that this Court's precedent seems to want to be getting away from the checklist approach. That case rests entirely on prohibition. And as Judge Bybee pointed out, there is nothing in the record that indicates what exactly the petitioner avowed he would do, what he was required to give up. Well, he's testified to some of that. He's testified that he had to sign a pledge, Your Honor. He's written a note that says he had to sign a promissory note. I'm on page 125 of the AR. And generally, what would occur when you went to report, the policeman would ask me or question me if I were in touch with any of the church members, if I were engaged in propagandizing the cult to anyone else. I had to report every Wednesday. Yes, Your Honor. And what essentially the petitioner is asking you to do is he's asking, one, for you to make a finding that was not before the board in the first instance. And second, he's asking you to say that the finding of no past persecution is not supported by substantial evidence. That's all. Well, Your Honor, I believe it's footnote 1 where they say that this is an inference that you may take. It's not an inference that is compelled. If you look at the declaration that he first signs, and I'm looking at the administrative record on 461, in reference to the promissory letter, he signed this promissory letter with no explanation of what is, in fact, in the promissory letter. And in view of my situation, trying to protect myself, I had to sign the promissory letter. After my family paid my bail, I was released back home with conditions. What did the promissory letter say? The fact is that the record is devoid of this. And then he shows up, and we don't even know what he's saying in response to these inquiries, which are... Court's indulgence. I thought I wrote it down. Which are being characterized as interrogations. He's showing up and... Well, you know, the I.J. made findings of fact here. That's correct, Your Honor. And it includes the findings concerning the interrogation that he was interrogated about the list of church members, the purpose of the meetings, that he ended up being kicked, shocked, had tea poured all over him, was shocked with an electric baton twice. It's told him he'd go to a labor camp if he didn't sign the affidavit, which he did under protest. And it says here that he was, as a condition of release, required to report every Wednesday, and the police inquired every week whether he'd contacted the other members. So those are the findings of the I.J. So why isn't that almost identical to the 2018 case that said that there was past persecution? Your Honor, the past persecution in the 2018 case, again, centered around what he promised in the pledge. And in the pledge, there's record testimony that says, I was required in the pledge to give up my religion. That's just not in the I.J. Well, he was required to give up the names of other people and demanded whether he preached Christianity. So it's not identical what he was required to tell the police every week, but it's pretty intimidating, is it not? Certainly, Your Honor. There's nothing about this that is satisfying or... What do you think is going to happen when the police ask me or question me if I were in touch with any of the church members, and he answered yes? Or when the police ask me if I were engaging in propagandizing the cult to anyone else, and he answered yes? What do we think was going to happen? Your Honor, frankly, it's not in the administrative record, so I don't know. Well, what I just read you is out of the administrative record. I'm reading you his testimony. Yes, Your Honor, that's his testimony. But there's no subsequent follow-up, and there's not even a testimony as to how he responded or how he felt about these. Frankly, impugning my own... All he felt about it was he left. He left for the United States in fear. Yes, Your Honor. He left. He reported for six months. During that time, he was able to acquire a passport and a visa, and he left on his visa six months after. So, to your question, Judge Bybee, my personal feelings or understanding of what would have happened is just, it's just not supported in the record, and these are inferences that there's, they're not compelled. They're simply inferences that petitioner's asking you to draw based on a lack of evidence. And in the first, it was, in the first instance, it was his burden to put forward all of this evidence. He was represented by counsel, and frankly, it was his burden to put forward all of this evidence. And the representations as to what happened in those interrogations are singular. There's one question on it. There's no follow-up on it. The subsequent dialogue goes into, does he practice here in the United States? So, to that end, to make this a prohibition case, it seems you have to know the context of what he was signing, and we just don't. And the petitioner... That seems to me not the entire focus of the 2018 petition. It seems to me that the petitioner's question is, does he practice here in the United States? But, it seems to me that the 2018 case, to be frank, I know that's how you'd like to characterize it, but it seems to me that the physical harm that was suffered in this case counts as past persecution. Yes, Your Honor. And, to that end, the immigration judge, as the finding, finder of fact, weighed the sum total of evidence. He was kicked. He had water splashed on him or tea poured on him. He, you know, these events happened. He was beaten and he was prodded, and found that they did not rise to that level. Right, but that's a legal conclusion. The actual things that happened are factual findings, and the question is, under our case law, do they equate to past persecution or don't they? That is a conclusion and not a fact, per se. Yes, Your Honor. And, in one of, and albeit it's a dissent opinion, but, as, you know, as far as I'm concerned, the court's indulgence, as Judge O'Scanlan wrote, it's, that the law is unequivocal on the point. The weighing of the evidence is emphatically the immigration judge's prerogative. The weighing of the evidence. So, perhaps the fact that the electrical prodding in some of these instances tilted the scales towards persecution where there was employment consequences, there were the follow-up inquiries, there was a pledge that was substantiated with testimony as to the sum total of that pledge. Whereas here, there is the electrical prodding, which, you know, I'm not going to underscore. I would lose credibility in this court. But when you, there were other factors that were absent. There was the absence of medical treatment, which in and of itself is not dispositive, but it doesn't necessarily compel the finding. He testified that it tingled when he was, when he was electrocuted, as opposed to other past findings of past persecution where there was dizziness, loss of hearing, stays in hospitals, days of, of essentially bed rest. And so the IJ had to balance the sum total based on this court's case law. It's not as though the IJ just came up with a decision out of nowhere. He balanced all of these findings in conjunction with this court's case law and found it to be not persecution. If there are no further questions. I don't believe that there are. Thank you. Thank you for your time, Your Honor. And my, my time is over. But the only, the only finding that is compelled in this case is to uphold the board and the immigration judge. Thank you. We're at 126. Is that correct? Yes, that is correct. May it please the court. Evan Buehler for petitioner. So three points on rebuttal. First, the IJ should have been compelled to make an, to find an inference that Mr. Cho forfeited his religious practice, as was the case in both Guos. Importantly, both of those pledges in those cases said different things, but it's not about what the pledge says. It's about what the pledge does. And here again, we know that Mr. Cho was unable to live his Christian life because he stated in his asylum application, he could not comply with his bail because he could not give up his beliefs at A.R. 461. He had weekly question, questioning, excuse me, which was focused on his religious exercise about the identity of his church members and propagandizing the cult. And again, this is different from the pledge or the anti-government pledge in Guos, where that was about a prohibition of distribution of religious materials. And Mr. Gu indeed stated that he decided not to attend a home church. Also, importantly, this this court can grant the petition fully under Guos to Guos v. Sessions. But if not, this court should remand for a violation of Wren. The BIA cited in an opposite case instead Aiden, which is wholly distinguishable. That implies and your argument is what this was not developed on. It was mentioned. It was not developed in your opening argument. So what what what is it? Please go ahead and answer. So because there was a favorable credibility finding in this case, the IJ needed to provide both notice and an opportunity for Mr. Cho to submit any corroborative evidence in this case. And because a lack of corroborative evidence was one of them. Is any of the is any of the things that the IJ faulted him for not providing go to the question of what conditions the police placed on it? So there were a couple facts or a couple pieces of evidence that were pointed out as not being provided. There were letters about the severity of harm, confirming his actual physical injuries. And there were letters from fellow home church members to see if they had suffered similar persecution or to the same level of persecution. But there was nothing explicitly about reporting requirements to confirm that he had reported. These were pieces of evidence that went to either future persecution or his fellow home church members. And it was not Mr. Cho's obligation to provide such evidence. It was the IJ's obligation instead to provide him with notice and an opportunity to submit such evidence or explain why it's unavailable.
judges: Graber, Bybee, Arterton